# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

ALLIED PORTABLES, LLC and CONNIE ADAMSON, a Florida limited liability company

       Plaintiffs,

v.

Case No:  2:15-cv-294-FtM-38CM

ROBIN YOUMANS, GARDEN ST. PORTABLES, LLC, WILLIAM "BILL&QUOT OSWALD, JR. , BILLOPRO, LLC, LORI A. LANGLOIS, DEBRA PALMER and PALMER ACCOUNTING & BOOKKEEPING SERVICE, INC.,

      Defendants.

_____/

## ORDER[1]

This matter comes before the Court on the Plaintiff Allied Portables, LLC's (Allied) Second Verified Motion for Preliminary Injunction (Doc. #37) filed on August 4, 2015. The Defendants, Robin Youmans, Garden Street Portables, LLC, filed their Response in Opposition (Doc. #41) on August 18, 2015. Defendants, William "Bill" Oswald , Jr., Billopro, LLC, Lori Langlois, Debra Palmer, and Palmer Accounting & Bookkeeping Service, Inc.'s (collectively with Youmans and Garden St. Portables Defendants) (Doc.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

#45) filed their Opposition to the Motion for Preliminary Injunction on August 25, 2015. On October 15, 2015, and October 21, 2015, the Court held an evidentiary hearing on the Motion. At the evidentiary hearing the Parties presented documents and live testimony in support of their positions. The Motion is fully briefed and ripe for the Court's review.

**FACTS**

Before the Court is Allied's First Amended Complaint containing eight (8) counts as follows: Count I for an alleged violation of the Computer Fraud and Abuse Act (CFAA) and Count II, a violation of the Federal Stored Communications Act are the only federal law claims in the Complaint. Plaintiffs' state law claims include allegations of the following: Count III violation of the Florida Privacy of Communication Act; Count IV misappropriation of trade secrets; Count V, tortious interference with an advantageous business relationship; Count VI, a civil conspiracy to convert (conversion); Count VII, breach of contract; and Count VIII, breach of fiduciary duty.

The primary business of Allied Portables is the provision of portable restrooms, flushing toilets, hand washing stations, hand sanitization stations, climate controlled restroom trailers, climate controlled shower trailers, and specialized restroom trailers for agricultural use. Allied Portables was formed in 2009 by Robin Youmans (Youmans) and Allied Recycling, Inc. Chester Adamson signed on behalf of Allied Recycling. Youmans owns 49% of Allied Portables and was selected to be the managing member. Connie Adamson was substituted as a member replacing Allied Recycling, LLC in 2012.

As managing member, Youmans carried out Allied Portables day to day administrative operations with the assistance of the other Defendants in this action, William Oswald, Jr. (Oswald), Lori Langlois (Langlois), and Debra Palmer (Palmer). As

the managing member, Youmans oversaw the daily operations of Allied Portables including sales, operations, vendor and customer relationships. Youmans via third party vendors set up and serviced Allied Portables' computer systems. Youmans had unfettered access to all of Allied Portables' confidential, business, and trade secret information.

Youmans accused Chester Adamson, the husband of Connie Adamson, who owns 51% of Allied Portables, of using her Allied Portables' password to gain access to Allied Portables' checking account and then using the funds for his own personal benefit. Youmans claims Chester Adamson submitted a bill to Allied Portables for $17,000.00 to pay for the Adamson's oldest son's fortieth (40) birthday party in Las Vegas, Nevada. Youmans changed the passwords to the accounts and created a new post office box to segregate Allied Portables' mail from Adamson's mail.  Subsequently, Youmans offered to purchase Connie Adamson's 51% stake in Allied Portables. On August 18, 2014, Connie Adamson sent Youmans a text message agreeing to sell her 51% interest in Allied Portables to Youmans.

On August 29, 2014, Youmans was scheduled to have a meeting with Connie Adamson for what she believed to finalize the sale of Allied Portables.  Instead of meeting Connie Adamson, Youmans was met by Allied Portables' attorneys, Gary Butler and Tom Coleman, who terminated Youmans from her position as manager of Allied Portables.  On September 3, 2014, Allied sent a letter via Federal Express to Youmans informing her that she had been terminated as managing member of Allied Portables, LLC.  Connie Adamson took over as managing member and has served as the sole managing member

since Youmans termination. Maria Adamson, Connie and Chester Adamson's daughter-in-law, replaced Youmans as the manager of business operations at Allied Portables.

In its First Amended Complaint, Allied alleges that Youmans took confidential trade secret information including customer lists, pricing information, event schedules for local communities, and Allied Portables' 10—Rental Rate Analysis Report which contains all the information necessary to run a portables business as well as other alleged confidential and trade secret information belonging to Allied. Allied avers that Youmans and Garden St. Portables never developed their own customer list but rather worked directly off Allied's customer list. In addition to the trade secret information and confidential materials, Plaintiffs allege Youmans kept her company issued i-Phone, i-Pad, and laptop computer. Youmans states she gave those items to her attorney, Karl Landsteiner, and that all of Allied Portables electronic equipment has now been returned.

Allied maintains that Youmans conspired with Palmer, Allied's bookkeeper, to divert and hold payments to reduce Allied's value to make the price of Allied Portables cheaper for Youmans' planned purchase. Further, Youmans changed the mailing address for Allied's receivables to allow her to intercept Allied's mail. Allied continues that Youmans directed Palmer to change Allied's payment address, electronic access credentials for Allied's accounting programs, and to prevent Chester Adamson access to Allied's systems. Youmans directed Palmer to take twenty (20) Allied Portable checks in case she needed them. Further, Youmans installed a computer in her home office using Allied's funds. Additionally, Youmans had a third-party vendor configure a firewall and take other unauthorized actions including changing the access credentials for the Total Activity Control software to impede Allied's operations in case she was terminated.

## **STANDARD OF REVIEW**

The decision to grant or deny a preliminary injunction is within the discretion of the district court. Advance Produce, Inc. v. Isadore A. Rapasadi & Sons, Inc., No. 8:13-CV-00242-T-30, 2013 WL 593845, at *1 (M.D. Fla. Feb. 14, 2013). Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. The purpose of a preliminary injunction is to maintain the *status quo* until the court can enter a final decision on the merits of the case. Jordan v. Def. Fin. & Accounting Servs., No. 8:15-CV-391-T-36TBM, 2015 WL 6166578, at *5 (M.D. Fla. Oct. 20, 2015) (citing Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir.2011)). A party seeking entry of a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. Forsyth Cnty. v. U.S. Army Corps of Eng'rs, 633 F.3d 1032, 1039 (11th Cir.2011) (quotations omitted).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." Id. (quoting ACLU of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd., 557 F.3d 1177, 1198 (11th Cir.2009)). The entry of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." Siegel v. LePore, 234 F.3d 1163, 1179 (11th Cir.2000) (quoting Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir.1975)); Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir.2003) (citations omitted) (holding since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction

5

unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites). A plaintiff may support its motion for a preliminary injunction by setting forth allegations of specific facts in affidavits. M.D. Fla. R. 4.06(b)(2), 4.06(b)(3). In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction. Jordan, 2015 WL 6166578, at *5 (citing Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir.1995)).

## **DISCUSSION**

Allied argues that it is entitled to injunctive relief for Counts I, II, III, IV, and VIII. Count I alleges Defendants violated the Computer Fraud and Abuse Act (CFAA) 18, U.S.C. § 1030(a)(2(C), (a)(4), (a)(5)(A)-(C), Count II, Violation of the Federal Stored Communications Act (SCA); Count III, Misappropriations of Trade Secrets; Count IV, Tortious Interference with Advantageous Business Relationship; and Count VIII, Breach of Fiduciary Duty by Youmans. The Court will address the relief requested in each count in turn.

### *(1) Count I Computer Fraud and Abuse Act*

Allied argues Defendants committed a number of prohibited activities which violate the CFAA. Specifically, Allied avers Defendants, using unauthorized means of access, obtained and transmitted voluminous amounts of Allied's confidential information. Allied argues that all of the information obtained through unauthorized means by Defendants was acquired post termination.

*Whether Allied Would Prevail on the Merits*

The CFAA was designed to target hackers who access computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possess the capacity to "access and control high technology processes vital to our everyday lives." Trademotion, LLC v. Marketcliq, Inc., 857 F. Supp. 2d 1285, 1289-90 (M.D. Fla. 2012) (citing LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130–31 (9th Cir.2009) (quoting H.R. Rep. 98–894, 1984 U.S.C.C.A.N. 3689, 3694 (July 24, 1984)). The CFAA, although primarily a criminal statute, provides a private right of action to "[a]ny person who suffers damage or loss by reason of a violation of this section" who "may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." Trademotion, 857 F. Supp. 2d at 1289-90 (quoting 18 U.S.C. § 1030(g)).

The CFAA defines seven categories of conduct that can give rise to civil or criminal liability, and intentionally accessing a protected computer without authorization, and as a result of such conduct, causing damage and loss, gives rise to criminal liability. 18 U.S.C. § 1030(a)(5)(C). Civil liability requires an additional showing: "A civil action for a violation of this section may be brought only if the conduct involves [one] of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(I)." 18 U.S.C. § 1030(g). In order to establish civil liability, a plaintiff must also show that defendants additionally violated subsection (I) by causing "loss to [one] or more persons during any [one]–year period ... aggregating at least $5,000 in value" (or other damages not relevant here). 18 U.S.C. § 1030(c)(4)(A)(i)(I). Damages for a violation involving conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. 18 U.S.C. § 1030(g).

Allied argues that its trade secrets and confidential information were accessed post-termination by the Defendants. The evidence presented at the hearing shows that Youmans was terminated from her managerial position at Allied Portables on August 29, 2014, however, she was not terminated from her position as managing member of Allied Portables, LLC until September 3, 2014. All of the alleged acts violating the CFAA occurred on or before August 30, 2014.

Allied's computer forensics expert, John Noble, testified that he did not discover any breaches or vulnerabilities in the firewalls or security measures employed with respect to any servers maintained by Allied Portables. Noble continued that he found no breaches, vulnerabilities, or attempts to infiltrate the firewalls or security measures in connection with Allied's Total Activity Control (TAC) cloud storage system. Further, Nobel never referenced any back doors or vulnerabilities in Allied's computer systems in any of his affidavits.

On the other hand, there was direct testimony from Youmans that she downloaded her emails onto her laptop computer on August 30, 2014. And, Oswald testified that he used his personal i-Pad to forward sixty-nine emails from his email account to himself on August 30, 2014. Oswald admitted that some of those emails had attachments that contained Allied Portables' business information. There was evidence presented to support that emails were downloaded after August 29, 2014, but no compelling evidence that the Allied servers or computer systems were breached, after August 30, 2014. Therefore, the Court cannot conclude there is a substantial likelihood that Allied would prevail on the merits of this claim. However, the Court will analyze the second factor regarding a substantial threat of irreparable injury.

*Whether There Exists a Substantial Threat of Irreparable Injury*

Allied alleges that its interests have been harmed by Defendants' unauthorized access to its confidential and trade secret information. "Preliminary injunctive relief derives from the necessity to restrain or compel conduct in those extraordinary situations where irreparable injury might result from delay or inaction." Jordan, 2015 WL 6166578, at *6 (citing U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1133 (11th Cir.2005) (citing United Bonding Ins. Co. v. Stein, 410 F.2d 483, 486–87 (3d Cir.1969)). Thus, "[a] showing of irreparable injury is the *sine qua non* of injunctive relief." Jordan, 2015 WL 6166578, at *6 The asserted irreparable harm must be actual and imminent, rather than remote and speculative. Jordan, 2015 WL 6166578, at *6. Further, because injunctions regulate future conduct, "a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." Id.

In this instance, the threat of immediate harm is not actual and imminent as the alleged violation of the CFAA occurred more than a year ago on or about August 30, 2014. Therefore, there is no imminent threat of harm and the Motion for a Preliminary Injunction as to Count I must be denied.

(2) *Count II Violation of the Federal Stored Communications Act*

Allied argues Defendants violated the SCA by improperly accessing and retrieving their e-mails and related information stored in Allied's computers. The Defendants respond that they did not violate the SCA because they did not enter Allied's systems without authorization.

*Whether Allied Would Prevail on the Merits*

The relevant section of the SCA provides that whoever "intentionally accesses without authorization a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains ... access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section." Vista Mktg., LLC v. Burkett, 39 F. Supp. 3d 1367, 1369-70 (M.D. Fla. 2014) (quoting 18 U.S.C. § 2701(a)). The statute allows for private causes of action. Specifically, a "person aggrieved by any violation of [the SCA] in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." Id. (quoting 18 U.S.C. § 2707(a)).

The Defendants assert the plain language of 18 U.S.C. § 2701 demonstrates that Youmans acted lawfully when accessing the emails in her Allied email account. Section 2701 (a) prohibits a person from intentionally accessing without authorization a facility through which an electronic communications service is provided and thereby obtains access to an electronic communication in electronic storage. Additionally, that statute says that it does not apply to conduct authorized "by a user of that service with respect to a communication of or intended for that user." *See* 18 U.S.C. § 2701 (c)(2) (Emphasis added).

In regards to Youmans use of her Allied email accounts to retrieve emails specifically addressed to her, the SCA does not prohibit an authorized user from entering the electronic storage system and retrieving their email. The issue here, then, is when

Youmans lost access to Allied's email system. Allied argues that Youmans lost access to her email account when she was terminated on August 29, 2014. Youmans counters that she was still the managing member of Allied Portables, LLC until at least September 3, 2014, when a letter was sent via Federal Express terminating her as managing member.

While Youmans was informed on August 29, 2014 by Attys. Butler and Coleman that she was terminated from Allied, she was still the managing member of Allied Portables, LLC until the following Tuesday, September 3, 2014. No evidence was presented that Youmans went into the system after August 30, 2014. Thus, as managing member Youmans could plausibly be an authorized user of Allied Portables' electronic communications system. Further, Defendants' computer forensics expert, Adam Sharp, testified that Youmans retrieved her emails from her laptop without entering Allied's computer system. Sharp added that Allied's system had not been breached and there was no evidence that Youmans was surreptitiously coming into the system remotely and trying to retrieve information. Therefore, the Court cannot determine that there is a substantial likelihood of success on the merits regarding the SCA claim regarding Youmans.

As to Oswald and Langlois, once they were terminated any access they attempted to gain into Allied's electronic communications system would most likely violate the SCA. Oswald admitted that he had retrieved emails he had forwarded to himself on August 30, 2014, however, Oswald said he never remotely accessed Allied's computer system.

Sharp, testified that there are ways Oswald and Langlois could access email accounts without actually entering Allied's system, however, he testified there was no

11

evidence that Oswald or Langlois used those. However, Sharp testified that Allied's system had not been breached. Thus, there is not enough evidence at this time for the Court to determine there is a substantial likelihood of success on the merits regarding the SCA claim against Oswald and Langlois.

However, the Court will continue its analysis with the second factor.

### *Whether There Exists a Substantial Threat of Irreparable Injury*

Allied alleges that its interest have been harmed by Defendants' unauthorized access to its electronic communications system. However, any access by the Defendants occurred over a year ago on or about August 30, 2014. The asserted irreparable harm must be actual and imminent, rather than remote and speculative. Jordan, 2015 WL 6166578, at *6. In this case, the alleged unauthorized access is too remote in time to cause immediate harm to Allied. Since all four of the elements must be met to justify an injunction, the failure to establish a substantial threat of irreparable injury is fatal to the Motion for a preliminary injunction for Count II, and the Motion is denied.

### *(3) Count III, Misappropriations of Trade Secrets*

Allied states it has a substantial likelihood of success on the merits because the Defendants utilized unauthorized access to its computer systems to misappropriate confidential information. Allied alleges Defendants accessed pricing formulas, customer leads, data compilations, business methods and techniques which all constitute trade secrets. Allied also claims Defendants took possession of the 10-Rental Rate Analysis Report which Allied described as the "guts" of its business. Defendants respond the information alleged to be trade secrets such as customer lists are easily obtainable by the general public and therefore, no violation of Allied's trade secrets could have occurred.

*Whether Allied Would Prevail on the Merits*

In order to state a claim for misappropriation of trade secrets under the FUTSA, Fla. Stat. § 688.001 *et seq.,* a plaintiff must allege that (1) it possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. VAS Aero Servs., LLC v. Arroyo*,* 860 F.Supp.2d 1349, 1358 (S.D.Fla.2012) (citing Del Monte Fresh Produce Co. v. Dole Food Co.*,* 136 F.Supp.2d 1271, 1291 (S.D.Fla.2001)). "To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." Del Monte*,* 136 F.Supp.2d at 1291. "A plaintiff has the burden to describe the alleged trade secret with reasonable particularity." Treco Int'l S.A. v. Kromka*,* 706 F.Supp.2d 1283, 1286 (S.D.Fla.2010) (citing Levenger Co. v. Feldman*,* 516 F.Supp.2d 1272, 1287 (S.D.Fla.2007)). Moreover, whether a particular type of information constitutes a trade secret is a question of fact. *See* Furmanite America, Inc. v. T.D. Williamson, Inc.*,* 506 F.Supp.2d 1134, 1141 (M.D.Fla.2007).

There was evidence presented at the hearing that Defendants obtained possession of Allied's confidential information including pricing information, customer lists sales routes, and business plan.  Of particular value was the 10-Rental Rate Analysis Report which Youmans had in her possession.  The 10-Rental Rate Analysis Report provides detailed information on Allied's pricing, customer contacts, and business practices.  Based upon the evidence presented to this Court, it is clear that Allied would

have a substantial likelihood of success on the merits of its claim that Defendants misappropriated its trade secrets.

### *Whether There Exists a Substantial Threat of Irreparable Injury*

The information contained in the 10—Rental Rate Analysis Report and other alleged confidential information is over a year old. Given the changing nature of the portables business with construction sites changing, customer contacts being replaced by new people, and the number of portable accommodations fluctuating over time, there does not appear to be an immediate threat of irreparable harm. Jordan, 2015 WL 6166578, at *6 (holding the asserted irreparable harm must be actual and imminent, rather than remote and speculative). Since all four of the elements must be met to justify an injunction, there is no need to address the remaining elements and the Motion is denied as to Count III.

### (4) *Count IV, Tortious Interference with Advantageous Business Relationship*

Allied states Defendants have used confidential information and trade secrets which they allegedly stole from Allied to systematically interfere in numerous Allied business relationships. Defendants respond that Allied's claims are not specific as to what business relationship was targeted and that mere competition is expected from former employees who are not bound by a non-compete contract.

### *Whether Allied Would Prevail on the Merits*

The required elements of a claim for tortious interference with a contractual or business relationship under Florida law are: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference

with the relationship; and (4) damage to the plaintiff." Astro Tel, Inc. v. Verizon Florida, LLC, 979 F. Supp. 2d 1284, 1296-97 (M.D. Fla. 2013) (citing Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir.2001) (quoting Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla.1994)).

Allied states generally that Defendants have used confidential information to hire its truck drivers and interfere with its established customer relationships. As such, Allied claims that it lost business due to Defendants' actions. Defendants argue the allegations of interference are general without naming specifics and that Allied has failed to offer any competent evidence the alleged confidential information or trade secrets were used to target Allied Customers

"[A] plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." Astro Tel, 979 F. Supp. 2d at 1297 (citing Ethan Allen, Inc., 647 So.2d at 814); S. Alliance Corp. v. Winter Haven, 505 So.2d 489, 496 (Fla. 2d DCA 1987)). *See also* Ferguson Transp. Inc. v. N. Am. Van Lines, Inc., 687 So.2d 821, 821 (Fla.1996) ("[T]o establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers."); Sarkis v. Pafford Oil Co., Inc., 697 So.2d 524, 526–27 (Fla. 1st DCA 1997) (dismissing complaint that alleged "general loss of business" and that failed to "identify the customers who were the subject of the alleged interference"). To be actionable, "the interference must be direct; conduct that has only indirect consequences on the plaintiff will not support a claim of tortious interference." Astro Tel, 979 F. Supp. 2d at 1297 (citing Williamson v. Sacred Heart Hosp., 1993 WL 543002, *51, (N.D. Fla. May 28, 1993)).

15

Finally, "for the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." Astro Tel, 979 F. Supp. 2d at 1297 (citing Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So.2d 381, 386 (Fla. 4th DCA 1999)).

Allied presented evidence at the hearing that Defendants took customer lists and other confidential information. Allied also provided the Court with information regarding one specific business relationship that was directly damaged by Defendants' actions. Allied called Daniel Koogler (Koogler), the Superintendent of Koogler Homes and one of Allied's customers. Koogler testified that he was approached by Garden St. Portables about switching from Allied to Garden St. Portables. Koogler remained with Allied, however, Koogler did state that he told Allied that Garden St. Portables prices were lower and Allied lowered its price to meet Garden St. Portable's price. Koogler's testimony supports Allied's position that Youmans committed a tortious interference with an advantageous business relationship because Allied was damaged by having to lower its prices to retain Koogler's business. Thus, there is a substantial likelihood of success on the merits of its claim that Defendants committed a tortious interference.

### *Whether There Exists a Substantial Threat of Irreparable Injury*

While Allied presented evidence that defendants interfered with a business relationship, the interference took place from November 7, 2014, through February 19, 2015. Given that Koogler stayed with Allied and no evidence was presented of other more recent contact with Koogler or other customers, there does not appear to be an immediate threat of irreparable harm. Therefore, the Motion is denied as to Count IV because there is no immediate threat of irreparable harm. Jordan, 2015 WL 6166578, at

*6 (holding the asserted irreparable harm must be actual and imminent, rather than remote and speculative).

### (5) Count VIII, Breach of Fiduciary Duty

Allied claims that Youmans breached her fiduciary duty by forming Garden St. Portables and competing against Allied while she continued to own forty-nine percent (49%) of Allied Portables, LLC. Allied cites to Fla. Stat. Chapter 608, Chapter 605 and common law as grounds for Youmans' violation of her fiduciary duty. Defendants argue that injunctive relief would be financially ruinous to Youmans and the other six (6) employees of Garden St. Portables as their employment is their sole source of income. It would also ensure that Garden St. Portables would fail as a business as it is only at a fledgling stage.

### Whether Allied Would Prevail on the Merits

The law controlling the standards of conduct for member and managing members of limited liability companies when Youmans was initially terminated on August 29, 2014, was Fla. Stat. § 608.4225(1). Under the provisions of Fla. Stat. § 608.4225(1), each manager and managing member owed a duty of loyalty and a duty of care to all members of the limited liability company. Foster-Thompson, LLC v. Thompson, No. 8:04-CV-2128-T-EAJ, 2007 WL 1725198, at *7 (M.D. Fla. June 14, 2007) (citing Fla. Stat. § 608.4225(1)). Section § 608.4225(1) was replaced by Fla. Stat. § 605.04091, the current statute governing the standards of conduct for members and managers of limited liability companies, on January 1, 2015. Fla. Stat. § 605.04091 reads in pertinent part:

> (1) Each manager of a manager-managed limited liability company and member of a member-managed limited liability company owes fiduciary duties of loyalty and care

17

> to the limited liability company and members of the limited
> liability company.
>
> (2) The duty of loyalty includes: . . .
>
> > (c) Refraining from competing with the company in the
> > conduct of the company's activities and affairs before
> > the dissolution of the company.

Youmans remains a member of Allied Portables, LLC and continues to own forty-nine (49%) percent of the business. It is clear that as a member of Allied Portables, LLC, Youmans continues to owe a fiduciary duty of loyalty and care to the limited liability company and its members. Specifically, Youmans owes Allied Portables, LLC a fiduciary duty to not compete in the portables business. Thus, the Court finds there is a substantial likelihood that Allied would prevail on the merits of its fiduciary claim.

### *Whether There Exists a Substantial Threat of Irreparable Injury*

As noted above the asserted irreparable harm must be actual and imminent, rather than remote and speculative. Jordan, 2015 WL 6166578, at *6. Because Youmans continues to compete with Allied and owns forty-nine (49%) percent of Allied, the substantial threat of irreparable harm is actual and imminent.

### *Whether the Threatened Injury to the Moving Party Outweighs Whatever Damage the Proposed Injunction May Cause the Opposing Party*

Maria Adamson, the current manager at Allied, testified regarding the damages Allied has suffered since Youmans commenced competing with Allied at Garden St. Portables. Maria Adamson testified that Allied is losing forty percent (40%) of their pervious business every day and had to reduce their pricing on jobs in order to compete with Garden St. Portables.

The Court does not find Maria Adamson's testimony persuasive. When questioned as to what analysis was performed to quantify the daily forty percent (40%) loss, who

18

performed the analysis, or how that analysis was conducted, Maria Adamson testified that she did not know. Maria Adamson continued that she could not tell how many customers have actually left Allied for Garden St. Portables. Instead she made conclusory allegations that customers had left and Allied's business had suffered because of Garden St. Portables. Particularly persuasive to the Court's analysis of the issue was her testimony that Allied Portables did not even hire anyone in sales to replace Youmans and Gertz from the end of August 2014 until sometime in December 2014.[2] Clearly, Maria Adamson did not have the knowledge of the business nor the experience in sales to replace Youmans or Gertz.

Based upon the evidence provided at the hearing, the Court concludes that, indeed, there were damages suffered as a result of Youman's breach of fiduciary duty, however, it is also reasonable to conclude that not all of Allied's loss of business income is directly due to competition from Garden Street Portables, but rather due in part to the way in which the business operations were managed after Youmans was fired.

Granting the proposed preliminary injunction against the Defendants would, in essence, close Garden St. Portables. While Youmans still owns forty-nine (49%) percent interest in Allied, all of the employees at Garden St. Portables—employees who do not have an interest in Allied Portables, LLC—would be adversely affected even though they owe no fiduciary duty to Allied. Additionally, Youmans did not leave Allied to start her own business in defiance of her fiduciary duty, she was removed from her position by Connie Adamson. As such, the damage caused by issuing the injunction despite

---

[2] Although Maria Adamson did testify she hired a young girl in September 2014, she did not provide her name nor disclose what actions the young girl had taken to further Allied's business.

Youmans alleged breach of fiduciary duty, outweighs whatever damage Allied may experience due to Garden St. Portable's competition. The Motion for preliminary injunction in regards to Count VIII is denied.

## CONCLUSION

While Allied has established that there is a substantial likelihood that it would prevail on some of its claims, it fails to demonstrate that there is an immediate threat of actual and imminent harm in Counts I, II, III, and IV. In regards to Count VIII, the threatened Injury to the Defendants outweighs whatever benefit the proposed injunction would provide to Allied. Therefore, after reviewing the Parties' memoranda of law and hearing the testimony at the evidentiary hearing, Allied's Motion for a Preliminary Injunction is due to be denied.

Accordingly, it is now

**ORDERED:**

Plaintiff Allied Portables, LLC's Second Verified Motion for Preliminary Injunction (Doc. #37) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 6th day of November, 2015.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record