UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALLIED PORTABLES, LLC and
CONNIE ADAMSON, a Florida
limited liability company

       Plaintiffs,

v.                                          Case No:   2:15-cv-294-FtM-38CM

ROBIN YOUMANS, GARDEN ST.
PORTABLES, LLC, WILLIAM
"BILL&QUOT OSWALD, JR.,
BILLOPRO, LLC, LORI A.
LANGLOIS and DEBRA PALMER,

       Defendants.

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon review of Defendant, Robin Youmans', Motion for Leave to File Amended Affirmative Defenses and an Amended Counterclaim ("Motion for Leave," Doc. 124)[2], filed on May 2, 2016.  On May 5, 2016, Plaintiffs filed their Response in Partial Opposition to Defendant's Motion for Leave.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Doc. 125. For the reasons that follow, the undersigned recommends that the motion be granted in part and denied in part.

## I. Background

On June 25, 2015, Plaintiffs filed their First Amended Complaint for Injunctive Relief and Damages. Doc. 31. Though the fifty page operative complaint contains nine counts against seven Defendants, the Court will outline only those allegations pertinent to the instant motion. Allied Portables, LLC ("Allied") was formed on March 26, 2009 and is in the business of providing portable accommodations and related services throughout the state of Florida. Doc. 31 at 5 ¶ 13; Doc. 31-1 at 2. On October 1, 2012, its then only members, Plaintiff Connie Adamson ("Adamson") and Defendant Robin Youmans ("Youmans"), entered into an Operating Agreement (Doc. 31-1) ratifying the formation of Allied, setting forth their respective shares in the company, and setting forth their rights and obligations, among other things. *See* Doc. 31-1 generally. Pursuant to the Operating Agreement, Adamson owns fifty-one percent (51%) of the shares in Allied and Youmans owns the remaining forty-nine percent (49%). Doc. 31-1 at 2. The Operating Agreement designates Youmans as the managing member of Allied, responsible for its day to day operations. *Id.* at 6. The Operating Agreement also requires each member to perform its duties "in good faith, in a manner reasonably believed to be in the best interests of Allied, and with such care as an ordinarily prudent person in a like position would use under similar circumstances." Doc. 31-1 at 5.

The operative complaint alleges that as an employee of Allied, Youmans was

authorized to access virtually all business information belonging to Allied. Doc. 31 at 8 ¶ 22. Allied terminated Youmans' employment on August 29, 2014 after speculation that Youmans was engaged in fraud, deceit, willful misconduct, and wrongful taking of Allied property. *Id.* at 9 ¶¶ 27-28. Subsequent to her removal, Youmans participated in the formation and operation of Garden St. Portables, a business venture that now competes directly against Allied. *Id.* at 40 ¶ 132. Allied and Adamson allege, among other things, that Youmans' actions prior to her removal as managing member and subsequent to her termination of employment with Allied violated the Operating Agreement. Specifically, Count VII of the operative complaint contains a claim by Adamson against Youmans for "Breach of Operating Agreement" (Doc. 31 at 39), Count VIII contains a claim by Allied against Youmans for "Breach of Fiduciary Duties to Allied" (Doc. 31 at 42), and Count IX contains a claim by Adamson against Youmans for "Breach of Fiduciary Duties to Adamson." Doc. 31 at 46.

On July 9, 2015, Youmans filed her Answer, Affirmative Defenses, and Counterclaim asserting thirty affirmative defenses and four counterclaims. Doc. 33. In her timely motion to amend,[3] Youmans moves to amend her Seventeenth Affirmative Defense and add a new Eighteenth Affirmative Defense. Doc. 124 at 2. She also seeks to amend her Counterclaim to reflect revisions to the numbering of Paragraph 42 and her prayer for relief against Connie Adamson in Count IV of the Counterclaim. *Id.* n.2. Plaintiffs oppose the amendment of Defendants'

---

[3] Pursuant to the Case Management and Scheduling Order, the deadline to amend pleadings was May 2, 2016, the same date on which Youmans filed her motion. Doc. 120 at 1.

Seventeenth Affirmative Defense and the addition of a new Eighteenth Affirmative Defense. Doc. 125 at 1. Plaintiffs do not oppose the Defendant's request to amend her Counterclaim to reflect revisions to the numbering of Paragraph 42 and her prayer for relief against Connie Adamson in Count IV of the Counterclaim. *Id.*

Youmans' Seventeenth Affirmative Defense currently reads as follows:

> As and for her Seventeenth Affirmative Defense, Youmans alleges that Adamson was the first party to materially breach the Operating Agreement existing between the parties. Specifically, Adamson, in concert with third parties, misappropriated the funds of Allied for her own personal use and the use of members of her family, orchestrated unequal and disproportionate distributions of corporate revenues to herself or for her benefit, compromised the tax status of Allied and has attempted, through her machinations, to force Youmans to relinquish her equity interest in the company. As a result of Adamson's actions, Youmans has been damaged. By virtue of this breach doctrine, Youmans is released from any further obligations under the Operating Agreement.

Doc. 33-2 at 5. In her Motion to Amend, Youmans seeks to add the following sentence after the second sentence in the paragraph above:

> In addition, Adamson materially breached her agreement to sell her interest in Allied to Youmans in accordance with Article XIII of the Operating Agreement existing between the parties.

Doc. 124 at 6 ¶ 17. Youmans also seeks to add a new Eighteenth Affirmative Defense that reads as follows:

> As and for her Eighteenth Affirmative Defense, Youmans alleges in the alternative that Adamson and Youmans entered into a contract for Adamson to sell to Youmans her fifty-one (51%) interest in Allied. Adamson materially breached the contract existing between the parties by failing to present Youmans with an appraisal establishing the purchase price for the acquisition, failing to proceed with a sale of her interest in Allied and terminating Youmans in furtherance of Adamson's hostile takeover of Allied. As a result of her prior material breach of the contract existing between the parties, Youmans has been

affirmatively discharged of any obligations thereunder.

Doc. 124 at 6 ¶ 18.

## II. Legal Standard

The grant or denial of an opportunity to amend a pleading lies within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). This discretion is limited, however, in that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Permissible reasons justifying denial are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999).

A motion to amend a complaint will be denied as futile when the proposed amendment to a complaint would not survive a motion to dismiss. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010). A complaint will be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 822 (11th Cir. 1999). The standard that applies to motions for leave to amend an answer and affirmative defenses is analogous to motions to amend a complaint.

*Florida VirtualSchool v. K12, Inc.*, No. 6:11-cv-831-Orl-31KRS, 2015 WL 2062848, at *2 (M.D. Fla. May 4, 2015); *Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 534 (S.D. Ala. 2007).   Thus, in the context of a motion to amend affirmative defenses, "a finding of futility is, in effect, a legal conclusion that the proposed defense would necessarily fail."   *Bartronics, Inc.* 245 F.R.D. at 534; *see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") (citations omitted).

In the present case, Youmans seeks the amendment due to information she received through discovery.   According to Youmans, during the deposition of Adamson, whom she refers to as the "President, Treasurer, and the sole Authorized Member of Allied," Adamson confirmed that she had a written agreement to sell her membership interest in Allied to Youmans.   Doc. 124 at 3.   In furtherance of this agreement, an agent for Adamson engaged an appraisal company to appraise Allied "in order to sell the company to Youmans."   *Id*.   Adamson, however, failed to follow through on her agreement to sell her Allied interest to Youmans.   *Id.* at 4.

Youmans relies on Articles XIII and XIV of the Operating Agreement in support of her proposed amendments that Adamson was the first breaching party under the Operating Agreement.   Doc. 124 at 2-3.   Article XIII, titled "By-Out by Company," of the Operating Agreement states:

> (a) The Company shall have the right to require a Member to sell the Interest of that Member to the Company or a designee of the Company, by giving written notice ("Notice") to such Member (the "Terminated Member"),

>    which Notice shall designate a Closing Date of at least thirty (30) days after the date of the notice.
>
> (b) The closing of the purchase and sale of the Terminated Member's Interest shall occur not later than thirty (30) days following the determination of the purchase price under Article XIV below.   The purchase price shall be paid in the manner set forth in Article XIV. The term "Terminated Member" includes the estate or legal representative of a Terminated Member.
>
> (c) On the closing date, the parties to the purchase and sale shall execute such documents and instruments of conveyance as may be necessary or appropriate (as determined by legal counsel for the Company) to confirm the purchase and sale of the Terminated Member's Interest, and the withdrawal of the Terminated Member as a member of the Company as of the date of the closing.

Doc. 124 at 2-3, 35-36.   Furthermore, the relevant portion of Article IX, titled "Fair Market Value, Purchase Price, Indebtedness and Releases" provides:

>    (a) Fair Market Value. For purposes of Article XIII, the purchase price shall mean the fair market value of the Interests to be purchased thereunder as agreed upon by the seller (or a seller's legal or personal representative) and the purchaser. If an agreement as to fair market value is not reached within thirty (30) days after the Notice under Article XIII, the fair market value determination shall then be made by a disinterested qualified appraiser mutually selected by the buyer and the seller. If the parties cannot reach agreement on selecting the said appraiser within forty five (45) days after the Notice, then the value shall be determined by the Company's certified public accountant.

Id. at 3, 36.

Plaintiffs' objections to the proposed amendments rely exclusively on the futility factor.[4]   Doc. 125.   Plaintiffs argue that both of the proposed amendments

---

[4] As noted, Plaintiffs do not oppose Youmans' request to amend her Counterclaim to reflect

rely on provisions of the Operating Agreement that directly contradict the proposed language of the amended and new affirmative defenses. *Id.* at 3. Plaintiffs point to the language of Article XIII which states that "[t]he Company shall have the right to require a Member to sell the Interest of that Member to the Company." Doc. 125 at 3, 5. Moreover, they argue, Article XIV applies only to situations when the company purchases a member's interest pursuant to Article XIII, not when a member agrees to purchase another member's interest. *Id.* at 6.

Based on a review of the proposed amendments and the Operating Agreement on which they seeks to rely, the undersigned agrees that the proposed amendments to the affirmative defenses would be futile. The additional sentence to the seventeenth affirmative defense states that Adamson materially breached Article XIII of the Operating Agreement for failing to sell her interest in Allied to Youmans. Doc. Doc. 124 at 6 ¶ 17. Article XIII contains no language that obligates Adamson to sell her interest to Youmans, nor does it give Youmans authority to force Adamson to sell her interest in the company. Doc. 124 at 2-3, 35-36. The title of Article XIII is clearly stated as "By-Out by Company." *Id.* The plain language of Article XIII clearly applies to situations where "[t]he Company shall have the right to require a Member to sell the Interest of that Member to the Company . . ." *Id.* The Operating Agreement identifies Allied as "the 'Company'". Doc. 124 at 30. Thus, Article XIII

---

revisions to the numbering of Paragraph 42 and her prayer for relief against Connie Adamson in Count IV of the Counterclaim. Doc. 125 at 1.

applies to a buy-out by Allied of the interest of any member of Allied, and has no applicability to a purchase by one member of another member's interest.

The Operating Agreement ratified the formation of Allied in accordance with the Florida Limited Liability Act[5] ("the Act"). Doc. 124 at 30. Pursuant to section 605.0407(1), a limited liability company ("LLC") is a member-managed LLC unless the operating agreement expressly provides that it is manager-managed. Fla. Stat. § 605.0407(1). In a member-managed LLC, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter." Fla. Stat. § 605.0407(2). Section 605.04073 sets forth the voting rights of members and managers of an LLC:

> (1) In a member-managed limited liability company, the following rules apply:
>
> (a)   Each member has the right to vote with respect to the management and conduct of the company's activities and affairs.
>
> (b)   Each member's vote is proportionate to that member's then-current percentage or other interest in the profits of the limited liability company owned by all members.
>
> (c)   Except as otherwise provided in this chapter, the affirmative vote or consent of a majority-in-interest of the members is required to undertake an act, whether within or outside the ordinary course of the company's activities and affairs, including a transaction under ss. 605.1001-605.1072.
>
> (d)   The operating agreement and articles of organization may be amended only with the affirmative vote or consent of all members.

---

[5] Currently, the "Florida Revised Limited Liability Company Act." Fla. Stat. § 605.0101.

Fla. Stat. § 605.04073(1)(a)-(d). Although Article VIII(a) of the Operating Agreement designates Allied as a member-managed LLC, however selects Youmans as the managing member (Doc. 124 at 34), it is apparent from the pleadings that the parties dispute whether Allied is member-managed or a manager-managed LLC. *See e.g.,* Doc. 127 at 15-18, Doc. 132 at 3-4. In any event, even for a manager-managed LLC, "the affirmative vote or consent of the majority-in-interest of the members is required to undertake an act outside the ordinary course of the company's activities and affairs. . ." Fla. Stat. 605.04073(2)(d). Nothing in Youmans' motion alleges that a majority-in-interest of the members voted to require Adamson to sell Adamson's interest to Allied or a designee of Allied, as Article XIII calls for. Doc. 124 at 35.

The proposed eighteenth affirmative defense seeks to rely on Article XIV of the Operating Agreement. Specifically, the proposed defense alleges that although Adamson had a separate agreement with Youmans to sell her interest in Allied, Adamson failed to present Youmans with an appraisal in accordance with Article XIV. Doc. 124 at 6 ¶ 18. If there is no breach under Article XIII, however, there can be no breach for failing to present an appraisal under Article XIV because the appraisal process under Article XIV is laid out "[f]or purposes of Article XIII." Doc. 124 at 3, 36. There is no other language in the Operating Agreement that covers the facts presented by Youmans' motion. The only conceivable set of facts that would implicate these provisions of the Operating Agreement is if the Operating Agreement was amended to cover the instant set of facts. In that case, the amendment would

need to be in writing, signed by all members of Allied, pursuant to Article XVII(c). Doc. 124 at 38. Although Youmans' motion and the proposed amendments state that she and Adamson entered into a separate "contract for Adamson to sell to Youmans her 51%," there are no allegations anywhere to state that the Operating Agreement was amended. Doc. 124 at 6 ¶ 18. Accordingly, because the proposed defenses would necessarily fail for being in direct contradiction of the plain language of the Operating Agreement, the motion in this respect should be denied.

Regarding Youmans' request to amend her counterclaim to reflect revisions to the numbering of subparagraphs of paragraph 42 and her prayer for relief against Adamson in Count IV of her counterclaim, the undersigned recommends that leave should be granted. It appears that these revisions are sought to correct scrivener's errors and not premised on bad faith or dilatory motive, nor are they futile or due to cause undue prejudice to Plaintiffs. In fact, Plaintiffs do not oppose this request. Doc. 125 at 1 n.1.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1. Defendant, Robin Youmans', Motion for Leave to File Amended Affirmative Defenses and an Amended Counterclaim (Doc. 124) be **GRANTED** in part and **DENIED** in part.

2. That Youmans be permitted to amend her Answer, Affirmative Defenses, and Counterclaim only to the extent that the numbering of subparagraphs in paragraph 42 are corrected, as reflected in Doc. 124 at 19 ¶ 42, and that the prayer

for relief against Adamson in Count IV be amended so that "Allied Portables, LLC" is replaced with "Connie Adamson," as reflected in Doc. 124 at 20 ¶ 43.

      3.    That Youmans be directed to file her amended Answer, Affirmative Defenses, and Counterclaim reflecting only those revisions outlined in paragraph 2 of this Report and Recommendation within seven days from the date of the Order adopting this Report and Recommendation.

**DONE** and **ENTERED** in Fort Myers, Florida on this 16th day of September, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record